# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| JOYCE HENDERSON, | ) |  |
| --- | --- | --- |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. CV-10-174-JHP |
|  | ) |  |
| HARP'S FOOD STORES, INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Before the Court are Defendant Harp's Food Stores, Inc.'s Motion for Summary Judgment and Brief in Support (Docket No. 34), Plaintiff's Response to Motion for Summary Judgment (Docket No. 36), and Defendant's Reply Brief In Support of Motion for Summary Judgment (Docket No. 44). For the reasons set forth below, Defendant's motion is **GRANTED**.

## BACKGROUND

### A.     Undisputed Factual Background[1]

Defendant Harp's Food Stores, Inc. ("Harp's") owns and operates a grocery store in Fort Gibson, Oklahoma. In that store on June 2, 2009, Plaintiff Joyce Henderson tripped and fell while shopping for cantaloupes. The cantaloupes were displayed in a large cardboard container resting on a brown wooden pallet placed on a white floor. The cardboard containers were roughly square in shape with the corners slightly recessed, forming an octagon. The container set upon a square pallet, the four corners of which were not covered by the cardboard container due to the container's octagonal shape. The recessed corners of the cardboard containers were printed with large arrows

---

[1] The following facts are either undisputed–i.e., not specifically controverted by Henderson in accordance with Local Civil Rule 56.1(c)–or are described in the light most favorable to Henderson. Immaterial facts are omitted.

pointing downward to the exposed corners of the pallets. The pallets were oriented such that their closed edges ran parallel to the aisle, and their open edges ran perpendicular to the aisle.

As Henderson approached the cantaloupe display she saw the exposed corners of the brown wooden pallet.[2] Henderson admitted that "[s]he had observed the exposed pallet and recognized it as a tripping hazard against which she could strike her foot and trip."[3] Henderson stopped her shopping cart next to an open edge of the pallet and looked at the cantaloupes.[4] In the process of examining the fruit, Henderson walked about the display and the pallet.[5] While selecting a cantaloupe, Henderson caught her foot on the exposed pallet and fell, breaking her hip.[6] Henderson admits that although she saw the pallet prior to her fall, she "d[oes] not know how it made her fall."[7]

**B.    Procedural Background**

Henderson filed suit in Muskogee County District Court on March 3, 2010. Harp's removed the case to this Court on May 10, 2010. In her state-court Petition, Henderson claims Harp's negligently displayed the cantaloupes in a manner that presented a danger to customers and failed to

---

[2]Response to Motion for Summary Judgment at 2, Docket No. 36 (hereinafter "Response").

[3]*Id.* at 3.

[4]*See id.* at 2; *see also* Defendant's Motion for Summary Judgment and Brief in Support, Exhibits 2-11, Docket No. 34 (hereinafter "Motion for Summary Judgment").

[5]*See* Motion for Summary Judgment, Exhibits 2-11, Docket No. 34.

[6]*See* Response at 2-3, Docket No. 36; *see also* Motion for Summary Judgment, Exhibits 2-11, Docket No. 34.

[7]Response at 2-3, Docket No. 34; *see also* Defendant's Reply Brief in Support of Motion for Summary Judgment at 1-2, Docket No. 44 (hereinafter "Reply").

warn customers of that danger.[8]

Harp's filed their Motion for Summary Judgment on December 2, 2010. Harp's argues that it cannot be legally negligent, claiming it owed no duty to Henderson because any hazard posed by the exposed pallet was an open and obvious condition.[9] Henderson does not dispute any of Harp's factual allegations, but disputes the conclusion that the pallet was an open and obvious condition.[10]

## DISCUSSION

Federal Rule of Civil Procedure 56(c)(2) provides the standard courts must use when determining whether summary judgment is proper. According to the rule, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Premises liability is an area of law that on which Oklahoma courts have spoken repeatedly. In *Phelps v. Hotel Management, Inc.*, the Oklahoma Supreme Court summarized premises liability and the duty of business invitors:

> A party seeking to establish negligence must prove by a preponderance of the evidence: 1) a duty owed by the defendant to the plaintiff to use ordinary care; 2) a breach of that duty; and 3) an injury proximately caused by the defendant's breach of duty. A business owner owes a duty to exercise ordinary care to keep its premises in a reasonably safe condition for use of its invitees and a duty to warn invitees of dangerous conditions upon premises that are either known or should reasonably be known by the owner.[11]

---

[8] Petition at 1, Docket No. 2-3.

[9] Motion for Summary Judgment at 1, 4-7, Docket No. 34.

[10] Response at 3, Docket No. 36.

[11] 1996 OK 114, ¶ 6, 925 P.2d 891, 893.

3

Thus, the threshold issue in a premises liability case is whether the defendant breached its duty to plaintiff to keep the premises reasonably safe, because "in the absence of a duty neglected or violated, there can be no actionable negligence."[12] An analysis of the duty owed to Henderson under Oklahoma law demonstrates that Harp's had no duty to warn Henderson of the open and obvious pallets supporting the cantaloupe display, therefore no duty was breached and Harp's is not liable for Henderson's injury. Therefore summary judgment is proper.

There is no dispute that Henderson was a business invitee at the Fort Gibson Harp's. As stated in *Phelps*, business invitors have a legal duty to "exercise reasonable care to prevent injury to an invitee."[13] However, this duty only extends to conditions of the premises "which are in the nature of hidden dangers, traps, snares, pitfalls and the like, in that they are not known to the invitee and would not be observed by him in the exercise of ordinary care."[14] In other words, if a hazard is open and obvious, the owner has no duty to either make the premises safer or protect against it.[15] However, the open and obvious defense can be inapplicable "where the condition or defect was visible but . . . unseen by the plaintiff."[16]

All of the circumstances must be examined to determine whether a particular condition is

---

[12] Buck v. Del City Apartments, Inc., 1967 OK 81, ¶ 21, 431 P.2d 360, 365 (collecting cases).

[13] Dover v. W. H. Braum, Inc., 2005 OK 22, ¶ 5, 111 P.3d 243, 245; *Phelps*, 1996 OK 114, ¶ 6, 925 P.2d at 893.

[14] *Dover*, 2005 OK 22, ¶ 9, 111 P.3d at 246; *Buck*, 1967 OK 81, ¶ 21, 431 P.2d at 365.

[15] Hatcher v. Super C Mart, 2001 OK CIV APP 59, ¶ 14, 24 P.3d 377, 380; *Dover*, 2005 OK 22, ¶ 5, 111 P.3d at 245 (citing Williams v. Tulsa Motels, 1998 OK 42, ¶ 6, 958 P.2d 1282, 1284).

[16] Julian v. Secured Inv. Advisors, 2003 OK CIV APP 81, ¶ 25, 77 P.3d 604, 608.

open and obvious as a matter of law.[17] Courts use an objective standard of due care to determine whether a particular hazard is open and obvious as a matter of law.[18] For example, it does not matter whether the invitee actually observes the defect if "an ordinary prudent person would have been able to see the defect in time to avoid being injured."[19]

Both Henderson and Harp's cite to *Phelps v. Hotel Management, Inc.*, in which the plaintiff hit her head on a decorative glass bowl that protruded into the seating area in a hotel lobby.[20] The plaintiff admitted that the bowl was clearly visible, but nevertheless argued that a reasonably prudent person would not have recognized that the bowl protruded into the seating area and posed a risk of injury.[21] The Oklahoma Supreme Court determined that "[t]he characteristics of the offending bowl as a hidden or open hazard at the time of the injury presented an issue of fact rather than one of law," therefore the trial court had inappropriately granted summary judgment.[22] Thus, in order to prove a hazard is open and obvious as a matter of law, the defendant must demonstrate not that a threatening object is merely visible, but that the potential for injury posed by the object could be appreciated by a reasonably prudent person, such that they had an opportunity to avoid that danger.

Another case addressing the "open and obvious" theory is *Zagal v. Truckstops Corp. of*

---

[17]Zagal v. Truckstops Corp. of Am., 1997 OK 75, ¶ 9, 948 P.2d 273, 275.

[18]Pickens v. Tulsa Metro. Ministry, 1997 OK 152, ¶ 10, 951 P.2d 1079, 1084.

[19]*Id.*

[20]1996 OK 114, ¶ 2, 925 P.2d 891, 892.

[21]*Id.* ¶¶ 5, 9, 925 P.2d at 892-93, 894.

[22]*Id.* ¶ 10, 925 P.2d at 894.

*America*.[23] In *Zagal*, the plaintiff walked into a convenience store, turned a corner to proceed down an aisle, and immediately tripped over a large cardboard box that a stockboy was using to stock shelves.[24] Plaintiff admitted that she was not looking down at the floor when she tripped on the box because she was familiar with the convenience store.[25] The trial court granted summary judgment, concluding that the cardboard box was visible and a reasonably prudent person would have seen and avoided it.[26] In its order reversing summary judgment, the court emphasized that "the characteristic of an item as being observable, whether a glass bowl or a cardboard box, cannot, by itself, require that item to be declared as a matter of law an open and obvious danger. . . . All of the circumstances must be examined to determine whether a particular condition is open and obvious to the plaintiff or not."[27] The language in these cases refines the "open and obvious" analysis: for a condition to be open and obvious as a matter of law, the particular hazard posed by the condition must be perceivable in addition to being merely visible.

Henderson's case can be distinguished from *Phelps* and *Zagal*. The primary distinguishing factor is that Henderson admits she not only saw the pallet on the floor, but also that she "recognized it as a tripping hazard against which she could strike her foot and trip."[28] *Phelps* and *Zagal* both involved situations in which the plaintiffs admitted the conditions that caused their injuries were

---

[23] 1997 OK 75, ¶¶ 1, 11, 948 P.2d 273, 273, 275.

[24] *Id.* ¶ 2, 948 P.2d at 274.

[25] *Id.* ¶ 3, 948 P.2d at 274.

[26] *Id.* ¶ 5, 948 P.2d at 274.

[27] *Id.* ¶ 9, 948 P.2d at 275.

[28] Response at 3, Docket No. 36.

6

visible, yet due to the nature of the condition or the circumstances of the incident, they were unable to recognize the hazard associated with such condition through use of reasonable care. Here, Henderson has admitted both that the brown pallet was visible and that she *recognized the danger of striking her foot and tripping* prior to her fall. It was this particular danger, recognized by Henderson prior to her injury, that caused the injury to plaintiff. Therefore, *Phelps* and *Zagal* do not aid Henderson's argument.

Despite Henderson's admission that she "did not know how [the pallet] made her fall,"[29] her counsel argues that the open end of the pallet presented a distinct hazard that was unappreciated by plaintiff. Specifically, Henderson argues that "the *open end* of the pallet presented a trap or danger different in kind from the danger presented by the solid edge of the pallet," and that a customer might not appreciate the risk that, while moving about the cantaloupe display to select a fruit, her toe could get caught in the open end of the pallet and cause her to fall.[30] This argument is unsupported by Oklahoma case law. There is no evidence that a reasonable person, upon observing the open end of the pallet as Henderson did,[31] would not perceive the hazard that one could catch his or her foot in the open end of the pallet and fall. Furthermore, this Court notes that the hazard resulting from striking one's foot against a pallet and catching one's foot inside the open end of the pallet is exactly the same: tripping and falling. Henderson saw the pallet *and* perceived the tripping hazard associated with it. As a matter of law, the exposed pallet supporting the cantaloupe display was an open and obvious condition, and Harp's therefore breached no duty to ameliorate or warn business invitees of

---

[29]*Id.* at 2-3; *see also* Motion for Summary Judgment, Exhibit 1 at 25, Docket No. 34.

[30]Response. at 7, Docket No. 36.

[31]*Id.* at 3, Docket No. 36.

7

that condition.

Plaintiff also cites *Hansen v. Academy, LTD.*, an Oklahoma Court of Civil Appeals opinion.[32] In *Hansen*, the plaintiff tripped and fell over the tongue of a boat trailer.[33] The incident took place on the sidewalk in front of Defendant Academy LTD., a sporting goods store.[34] Plaintiff claimed she tripped over the boat tongue in the sidewalk because she was distracted by the boat display, which included a large inflatable shark.[35] The plaintiff testified that "the boat tongue was visible, but she did not see it before she fell."[36] The Court of Civil Appeals held that, even though the boat tongue was visible, an issue of material fact existed as to whether Academy had negligently left the boat tongue in a pathway where it knew business invitees would be distracted by the display of the boat and inflatable shark.[37] The Appeals Court noted that the "evidence certainly raised a question of fact as to whether Academy intended for its customers to devote their attention to the merchandise on display rather than to the sidewalk."[38]

Henderson's case is distinguishable from *Hansen* in two ways. First, the plaintiff in *Hansen* testified that she never saw the boat tongue due to the distracting display.[39] In contrast, Henderson

---

[32] 2006 OK CIV APP 63, 136 P.3d 725; *see* Response at 9-10, Docket No. 36.

[33] *Id.* ¶ 2, 136 P.3d at 725.

[34] *See id.*

[35] *See id.*

[36] *Id.*

[37] *See id.* ¶¶ 9-10, 136 P.3d at 726-27.

[38] *Id.* ¶ 9, 136 P.3d at 727.

[39] *See id.* ¶¶ 2, 9, 136 P.3d at 725, 726.

8

admits that she in fact saw the protruding corner of the pallet and recognized the hazard associated with it.[40] Second, the court in *Hansen* found that the boat and shark display could be factually viewed as an owner-created dangerous condition because the display could be a foreseeable distraction from the hazard presented by the boat tongue protruding across the sidewalk.[41] This Court notes from the evidence presented that, instead of creating a distraction from the exposed pallet corners, the cantaloupe display actually drew attention to the pallet corners. Still images derived from the security camera footage of this incident clearly show large arrows painted on the corners of the cardboard boxes holding the cantaloupes.[42] These arrows point directly to the exposed corners of the pallets supporting the cantaloupe display - the exact condition that Henderson claims to have caused her injury. Because the cantaloupe display actually drew attention to the alleged hazardous condition, the *Hansen* case is distinguishable and does not provide an exception to the open and obvious rule.

The exposed pallets supporting the cantaloupe display at Harp's were open and obvious as a matter of law. Therefore, Harp's had no duty to ameliorate the condition or warn invitees of the hazard. Because Harp's owed no duty to Henderson, it cannot be held liable for her injury. Viewing the facts in the light most favorable to the plaintiff, summary judgment is proper as a matter of law.

## CONCLUSION

For the reasons set forth herein, Harp's Motion for Summary Judgment is GRANTED.

---

[40]*See* Response at 3, Docket No. 36.

[41]*See Hansen*, 2006 OK CIV APP ¶ 10, 136 P.3d at ??????.

[42]Motion for Summary Judgment, Exhibits 2-10, Docket No. 34.

9

IT IS SO ORDERED this 1st day of March, 2011.

James H. Payne
United States District Judge
Eastern District of Oklahoma